1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   UNITED STATES OF AMERICA,

8                          Plaintiff,          NO:  1:14-CV-3162-RMP

         v.
9                                              ORDER DENYING KING
                                               MOUNTAIN'S MOTION FOR
10  KING MOUNTAIN TOBACCO             SUMMARY JUDGMENT
    COMPANY, INC.,

11                         Defendant.

12

13        BEFORE THE COURT is King Mountain Tobacco Company, Inc.'s Motion

14  for Summary Judgment, **ECF No. 41**.  The Court heard telephonic oral argument

15  on the motion on September 16, 2015.  Trial Attorney Kenneth Sealls appeared on

16  behalf of the United States, and Randolph Barnhouse appeared on behalf of King

17  Mountain.  The Court has reviewed the motions, considered the parties' arguments,

18  and is fully informed.

19                          **BACKGROUND**

20        The Court incorporates by reference its Order regarding various motions,

21  ECF No. 46, in which the Court recounts the procedural and factual background of

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 1

this case.

## DISCUSSION

**A.    Takings Clause**

King Mountain moves for summary judgment in its favor on the basis that the FETRA assessments constitute an unconstitutional taking under the Fifth Amendment and therefore are invalid.  ECF No. 41.  First, King Mountain argues that the FETRA assessments are per se takings, citing *Horne et al v. USDA*, 135 S.Ct. 2419 (2015), in support of its argument.  Second, King Mountain argues in the alternative that the FETRA assessments are regulatory takings under *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) (plurality opinion).

### i.    Relevant Law

The final clause of the Fifth Amendment provides:  "nor shall private property be taken for public use, without just compensation."  Const. amend. V.  The Takings provision "does not prohibit the taking of private property, but instead places [conditions] on the exercise of that power:" (1) the taking must be for a "public use," and (2) "just compensation" must be paid to the owner.  *Brown v. Legal Foundation of Wa.*, 538 U.S. 216, 231 (2003); *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Ca.*, 482 U.S. 304, 315-16 (1987).  The Supreme Court has emphasized the role of the takings doctrine as "barring Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY JUDGMENT ~ 2

1  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

2         Thus, the Court conducts a two-step inquiry when analyzing a takings claim.

3  First, the Court determines whether a "taking" has occurred:  "that is, whether the

4  complained-of government action constitutes a 'taking,' thus triggering the

5  requirements of the Fifth Amendment."  *Horne v. USDA*, 750 F.3d 1128, 1136 (9th

6  Cir. 2014) *reversed on other grounds by Horne v. USDA*, 135 S.Ct. 2419 (2015).

7  Second, the Court asks whether the government provided "just compensation" to

8  the property owner.  *Id.*  The party challenging government action bears the burden

9  of proving that the action constitutes an unconstitutional taking.  *Eastern*

10  *Enterprises v. Apfel*, 524 U.S. 498, 522 (1998).

11         The Supreme Court has recognized broadly two types of takings.

12  Historically, the Court has recognized the "classic taking" or "paradigmatic taking"

13  in which the government directly appropriates or physically invades private

14  property.  *Lingle*, 544 U.S. at 537; *Eastern Enterprises*, 524 U.S. at 522.  Such

15  physical invasion constitutes a per se taking and creates a "clear rule" establishing

16  "a categorical duty to compensate the former owner, regardless of whether the

17  interest that is taken constitutes an entire parcel or merely a part thereof."  *Tahoe-*

18  *Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S.

19  302, 322 (2002).

20         The Supreme Court has applied this "clear rule" when the government took

21  possession of a leasehold and physically occupied the property for its own use,

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 3

1    *United States v. General Motors Corp.*, 323 U.S. 373 (1945); when the government

2    appropriated part of a rooftop to provide for the installation of television cables,

3    *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); and when

4    the government used private airspace to fly an airplane into a government airport,

5    *United States v. Causby*, 328 U.S. 256 (1946).  *See Tahoe Sierra*, 535 U.S. at 322

6    (referencing these examples).  Although some of these per se takings may have

7    been implemented through regulation, *see Loretto*, 458 U.S. at 423, their defining

8    feature is a physical possession or invasion of private property, and the Court

9    applied the clear rule to each.

10        In later Supreme Court jurisprudence, the Court recognized the concept of

11    regulatory takings, in which government regulation proves to be "so onerous that

12    its effect is tantamount to a direct appropriation or ouster . . . ."  *Lingle*, 544 U.S. at

13    537.  Whether government action constitutes a regulatory taking is "a question of

14    degree" that "cannot be disposed of by general propositions."  *Penn. Coal Co. v.*

15    *Mahon*, 260 U.S. 393, 416 (1922).  Accordingly, determining whether challenged

16    government action amounts to a regulatory taking involves an "essentially ad hoc,

17    factual inquir[y]."  *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104,

18    124 (1978).

19        Within the regulatory takings doctrine, the Court has identified another form

20    of per se taking that results whenever a regulation completely "deprives an owner

21    of 'all economically beneficial uses' of his land."  *Tahoe Sierra*, 535 U.S. at 330

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 4

1    (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992))

2    (emphasis in original).  Under *Lucas*, a regulation need not result in an actual

3    physical invasion or possession of private property to constitute a "total taking"; if

4    the regulation "prohibits all economically beneficial use of land," the clear rule

5    applies and the government has a categorical duty to compensate the owner.

6    *Lucas*, 505 U.S. at 1030.  The regulatory per se taking rule established in *Lucas*

7    does not apply to the imposition of FETRA assessments in this case because there

8    is no challenge of the government's taking of land.

9        Additionally, the Supreme Court has referred to the government action in

10   *Loretta*, requiring installation of television cables on private property, both as a

11   classic per se taking and as a regulatory per se taking.  *Compare Tahoe Sierra*, 535

12   U.S. at 322 (grouping *Loretta* with other classic per se takings cases), with *Lingle*,

13   544 U.S. at 538 (referring to the rule established in *Loretta* as one of "two

14   categories of regulatory action").  However, the distinction is irrelevant to this

15   Court's analysis, because *Loretta* involved a physical invasion or possession of

16   private property, and there has been no physical invasion or possession of private

17   property here.

18       If a challenged government action does not fall within either of these two

19   categories constituting regulatory per se takings (*Lucas* or *Loretta*), then the court

20   does not apply the clear rule test but instead must determine whether the

21   challenged action nonetheless constitutes a regulatory taking under the balancing

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 5

1    factor test set forth in *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104

2    (1978).  *Lingle*, 544 U.S. at 538.  The Court considers "the economic impact of the

3    regulation on the claimant," "the extent to which the regulation has interfered with

4    distinct investment-backed expectations," and "the character of the governmental

5    action – for instance, whether it amounts to a physical invasion or instead merely

6    affects property interests through some public program adjusting the benefits and

7    burdens of economic life to promote the common good."  *Id.* at 538-39 (quoting

8    *Penn Central*, 438 U.S. at 124) (internal quotation marks omitted).  Government

9    action must impose a severe enough burden on private property rights that it is the

10   "functional[] equivalent to the classic taking in which government directly

11   appropriates private property or ousts the owner from his domain."  *Id.* at 539.

12         ii.    *Takings Analysis*

13              a.    Per Se Takings

14         From the outset, there is no allegation that government agents physically

15   entered King Mountain's property or safe-deposit box and physically took

16   possession of King Mountain's money in order to collect the FETRA assessments.

17   To the contrary, notification of the assessments came by invoice, and King

18   Mountain was independently responsible to wire the money to the government.

19   Failure to do so resulted not in a physical occupation or shut-down of King

20   Mountain's operations but in the accrual of interest on the assessments imposed.

21   Nevertheless, King Mountain contends that the FETRA assessments constitute a

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 6

per se taking comparable to the taking in *Horne et al v. USDA*, 135 S.Ct. 2419 (2015).

In *Horne*, the USDA's California Raisin Marketing Order required raisin growers to physically set aside a portion of their crop for the government. *Horne*, 135 S.Ct. at 2424. The Government could then dispose of the set aside raisins as it deemed appropriate. *Id.* The Supreme Court held that the Raisin Marketing Order was "a clear physical taking" because "[a]ctual raisins [were] transferred from the growers to the Government." *Id.* at 2428.

King Mountain spends the majority of its argument citing to the petitioner's brief before the Supreme Court, stating that "[t]his case, just like in *Horne*, involves a physical taking by the USDA." ECF No. 41 at 10. King Mountain fails to explain how the imposition of an assessment or fee constitutes a physical taking like that in *Horne* where there is no evidence of the government physically invading or possessing anything. This case is not analogous to *Horne*. The Court rejects the argument that imposition of FETRA assessments equates to a physical taking of King Mountain's private property.

King Mountain argues that the "clear rule" analysis traditionally employed in per se takings cases also "applies to the taking of money, or 'monetary exactions.'" ECF No. 41. King Mountain cites *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), and *Koontz*, 133 S.Ct. at 2600, to support the argument that the clear rule applies in this case. However, both cases involved a

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY JUDGMENT ~ 7

1    specific, identifiable monetary account.  In *Webb*, the Court held that "a county's

2    appropriation of the interest earned on private funds deposited in court in an

3    interpleader action" constituted an unconstitutional taking, but only under the

4    specific facts of that case, in which the county also retained a separate fee based on

5    the amount of principle deposited.  *Webb's*, 449 U.S. at 159; 164.

6        In *Koontz*, the Court held that a local government agency had effected an

7    unconstitutional taking when it refused to give the petitioner a land use permit

8    unless he either ceded a large portion of his land to the agency as a conservation

9    easement or paid to make improvements on agency-owned land several miles

10   away.  *Koontz*, 133 S.Ct. at 2593.  The agency's extortionist conduct was

11   untenable because it effectively prevented the petitioner from exercising his

12   constitutional right to obtain just compensation for property appropriated by the

13   government.  *Id.*  The Court stated that the monetary obligation that the agency

14   attempted to impose on the petitioner "operate[d] upon . . . an identified property

15   interest" because it "burdened petitioner's ownership of a specific parcel of land."

16   *Id.* at 2599 (citing *Eastern Enterprises*, 524 U.S. at 540 (Kennedy, J., concurring in

17   the judgment and dissenting in part)).

18       More importantly, the *Koontz* Court stated unequivocally:  "It is beyond

19   dispute that taxes and user fees . . . are not takings."  *Koontz*, 133 S.Ct. at 2600-01.

20   The *Koontz* holding "[did] not affect the ability of governments to impose property

21   taxes, user fees, and similar laws and regulations that may impose financial

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 8

1    burdens on property owners." *Id.* at 2601.  Indeed, the Ninth Circuit has stated that

2    the per se analysis or clear rule "is a particularly inapt analysis when the property

3    in question is money.  As the Supreme Court has observed, 'it is artificial to view

4    deduction of a percentage of a monetary award as physical appropriations of

5    property.  Unlike real or personal property, money is fungible.'" *Washington*

6    *Legal Foundation v. Legal Foundation of Washington*, 271 F.3d 835, 845 (9th Cir.

7    2001) (quoting *United States v. Sperry Corp.*, 493 U.S. 52, 62, n.9 (1989).

8         King Mountain attempts to distinguish FETRA assessments from taxes, but

9    it makes no difference to the Court's analysis here.  The FETRA assessments were

10   not imposed against any specific, identifiable property, and therefore do not

11   constitute either a classic or regulatory per se taking.

12              b.    Regulatory Taking

13        King Mountain argues that the FETRA assessments constitute a regulatory

14   taking under *Eastern Enterprises v. Apfel*.  ECF No. 41 at 41.  In *Eastern*

15   *Enterprises*, the petitioner was an energy company that was formerly involved in

16   the coal industry.  524 U.S. at 516.  Although petitioner had been out of the coal

17   mining business for nearly forty years, the Coal Industry Retiree Health Benefit

18   Act of 1992 required the petitioner to pay health care premiums for retired coal

19   workers who had previously worked for petitioner's company when it mined coal.

20   *Id.* at 517.  The premiums proved to be substantial in their cost, amounting to more

21   than $5 million for one 12-month period.  *Id.*  Petitioner argued that requiring it to

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 9

1    pay health care premiums for retired coal workers violated the Takings Clause of

2    the Fifth Amendment and petitioner's substantive due process rights.  *Id.*

3        King Mountain's reliance on *Eastern Enterprises* is misplaced because the

4    opinion produced by the Court was a plurality decision in which five justices held

5    that the premiums did not violate the Takings Clause.  Justice O'Connor wrote the

6    plurality opinion, in which Justice Scalia, Justice Thomas, and Chief Justice

7    Rehnquist joined.  The four justices held that the premiums constituted a taking

8    because of the considerable, retroactive financial burden they placed on the

9    petitioner.  *Id.* at 529-37.  However, the same four justices abstained from

10   considering whether the premiums also violated due process.  *Id.* at 538.

11       Justice Kennedy wrote an opinion concurring in the judgment, because he

12   believed the premiums did violate due process, but dissenting in part, on the basis

13   that the premiums did not constitute a taking.  *Id.* at 539 (Kennedy, J., concurring

14   in the judgment and dissenting in part).  The four remaining justices, Justice

15   Stevens, Justice Souter, Justice Breyer, and Justice Ginsburg, all agreed with

16   Justice Kennedy that the premiums did not constitute a taking, but also found that

17   the premiums did not violate due process.  *Id.* at 550 (Stevens, J., dissenting); *id.* at

18   553 (Breyer, J., dissenting).

19       Justice Kennedy acknowledged that the Coal Act imposed a "staggering

20   financial burden on the petitioner," but stated that the law "neither targets a

21   specific property interest nor depends upon any particular property for the

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 10

1   operation of its statutory mechanisms.  The liability imposed on [the petitioner] no

2   doubt will reduce its net worth and its total value, but this can be said of any law

3   which has an adverse economic effect."  *Id.* at 540; 543 (Kennedy, J., concurring

4   and dissenting).  Justice Kennedy argued that the "law simply imposes an

5   obligation to perform an act, the payment of benefits."  *Id.* at 540.  He tied his

6   analysis to the third regulatory takings factor, finding that the character of the

7   government action proved that it was not a taking under the Fifth Amendment.  *Id.*

8   at 542.  Justice Breyer agreed with him, as did Justices Stevens, Souter, and

9   Ginsburg, stating:  "This case involves not an interest in physical or intellectual

10  property, but an ordinary liability to pay money . . . ."  *Id.* at 554 (Breyer, J.,

11  dissenting).

12      Nevertheless, King Mountain contends that Eastern Enterprises stands for

13  the principle that "government taking of money is subject to Fifth Amendment

14  protections."  ECF No. 45 at 2.  The Ninth Circuit has not expressly decided

15  whether *Eastern Enterprises* establishes controlling precedent that a statute

16  creating general liability may amount to a taking.[1]  However, other circuit courts

17

18  [1] The Ninth Circuit Court has relied on *Eastern Enterprises* for the general

19  proposition, supported by both Justice O'Connor's and Justice Kennedy's

20  opinions, that "retroactivity is generally disfavored in the law."  *See, e.g., Angelotti*

21  *Chriopractic, Inc. v. Baker*, 791F.3d 1075, 1084 (9th Cir. 2015); *Sierra Forest*

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 11

have rejected arguments that *Eastern Enterprises* establishes binding precedent

that a regulation of general liability may constitute an unconstitutional taking.  *See,*

*e.g., Swisher Int'l v. Schafer*, 550 F.3d 1046, 1054 (11th Cir. 2008) (declining to

apply takings analysis to a FETRA challenge in part because five justices in

Eastern Enterprises "expressed the view that the Takings Clause does *not* apply

where there is a mere general liability"); *Commonwealth Edison Co. v. United*

*States*, 271 F.3d 1327, 1339-40 (Fed. Cir. 2001) (applying the "majority" opinion

in *Eastern Enterprises* that "the imposition of an obligation to pay money does not

constitute an unconstitutional taking of property."); *Parella v. Retirement Bd. Of*

*Rhode Island*, 173 F.3d 46, 58 (1st Cir. 1999) (stating that *Eastern Enterprises*

stands for the principle enunciated by the dissenting justices and Justice Kennedy

that "plaintiffs must first establish an independent property right before they can

argue that the state has taken that right without just compensation."  *See also*

*United States v. Asarco Inc.*, No. CV 96-0122-N-EJL, CV 91-342-N-EJL, 1999

WL 33313132, at \*4 (D. Id. Sep. 30, 1999) (holding that *Eastern Enterprise* is not

---

*Legacy v. Sherman*, 646 F.3d 1161, 1198 (9th Cir. 2011) (Fischer, J., dissenting in

part); *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1167 (9th Cir. 2004)

(Bybee, J., dissenting); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1052

(9th Cir. 2004); *Pauly v. USDA*, 348 F.3d 1143, 1152 (9th Cir. 2003); *Quarty v.*

*United States*, 170 F.3d 961, 968 (9th Cir. 1999).

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 12

controlling authority and has little precedential value because it is "limited to a specific result; the Coal Act is unconstitutional as applied to Eastern Enterprises.").

The Court is unpersuaded that *Eastern Enterprises* establishes a rule that the taking of unspecified assets through the imposition of a statute of general liability can amount to an unconstitutional taking. Five Supreme Court justices rejected this rule, and even the plurality opinion states that its holding applies to "the specific circumstances of [that] case." *Eastern Enterprises*, 524 U.S. at 537. Throughout the Supreme Court's Takings Clause jurisprudence, "the regulatory taking analysis has been employed [where] a specific property right or interest has been at stake." *Id.* at 541 (Kennedy, J., concurring in judgment and dissenting in part) (citing more than a dozen cases). FETRA does not "operate upon or alter an identified property interest." *Id.* at 540. It merely "imposes an obligation to perform an act," the payment of assessments. *Id.* Therefore, FETRA assessments do not amount to an unconstitutional taking.

**B.    Due Process Clause**

King Mountain argues in the alternative that the FETRA assessments violate the Due Process Clause of the Fifth Amendment, relying again on *Eastern Enterprises*. ECF No. 41 at 18.

Laws that adjust "the burdens and benefits of economic life" are presumed to be constitutional. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). The party complaining of a due process violation must show that "the legislature

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    has acted in an arbitrary and irrational way." *Id.*  However, if the government

2    demonstrates that the law has "a legitimate legislative purpose furthered by rational

3    means," the law does not violate due process. *Gen. Motors Corp. v. Romein*, 503

4    U.S. 181, 191 (1992).  "[T]he retroactive aspects of economic legislation" must

5    meet the same standard.  *Id.* (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray*

6    *& Co.*, 467 U.S. 717, 730 (1984)) (internal quotation marks omitted).

7          When considering whether FETRA had a legitimate legislative purpose, the

8    Eleventh Circuit Court of Appeals stated:

9          The legitimate legislative purpose is apparent.  Congress obviously
          perceived problems in the industry, perceived a need to eliminate the
10         old subsidy system, and decided to move to a free market system.
          However, Congress recognized that tobacco farmers and quota holders
11         should be provided some cushion for the transition.  Seeing these
          economic problems in the industry, Congress exercised its legitimate
12         legislative powers to address the same.

13   *Swischer Intern*, 550 F.3d at 1058.  Additionally, the Eleventh Circuit concluded

14   that "the means Congress chose to address these industry problems were rational."

15         Congress recognized that such a transition to a free market system
          would benefit all current and future tobacco manufacturers and
16         importers, and thus devised a system of assessments to fund the
          transition to the free market system – i.e., assessing all current tobacco
17         manufacturers and importers, all of whom would benefit from the
          transition to the free market system.
18
     *Id.* at 1058-59.
19
          The Court finds the Eleventh Circuit's analysis persuasive, as have other
20
     district courts.  *See, e.g., United States v. Native Wholesale Supply Co.*, 822
21

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 14

F.Supp.2d 326, 336 (W.D.N.Y. 2011).  It is evident that the transition from a quota system to a free market system would lower the price of tobacco, to the detriment of tobacco farmers, but to the benefit of tobacco manufacturers such as King Mountain.  Imposing an assessment on those tobacco manufacturers who were likely to benefit from the price decrease was a rational and legitimate exercise of legislative authority.

King Mountain contends that FETRA is retroactive in application because it is intended to remedy the sins of large tobacco companies committed prior to FETRA's enactment.  ECF No. 41.  King Mountain argues that FETRA violates due process as applied to it because King Mountain was not in operation until 2004 when FETRA went into effect.  ECF No. 41.

King Mountain's contentions are without merit.  FETRA assessments were imposed against current tobacco manufacturers and importers based on their market share in the current quarter.  No aspect of the assessment calculations was based on past conduct.  Whether the legislative purpose behind FETRA related to historical price quotas is irrelevant to the question of whether FETRA assessments are retroactive in application.  They do not burden King Mountain based on King Mountain's past conduct, and therefore are not retroactive in nature.  *See Eastern Enterprises*, 524 U.S. at 537 (noting that the Coal Act punished the petitioner for its own "conduct far in the past").  Therefore, the Court finds that FETRA does not violate the Due Process Clause of the Fifth Amendment.

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY JUDGMENT ~ 15

**C.    Equal Protection Clause**

King Mountain argues that FETRA assessments violate the Equal Protection Clause because King Mountain is a smaller company than other tobacco companies and is therefore treated unequally.  ECF No. 41 at 18-19.  "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993).

However, the Court need not apply the rational basis test in this case because there is no evidence of unequal treatment.  FETRA assessments are imposed based on each tobacco manufacturer's own market share per product.  The Court is perplexed by King Mountain's complaint that this somehow disadvantages King Mountain.  King Mountain is required to pay no more than its own sale of tobacco in the free market commands.  Larger tobacco companies presumably sell more than King Mountain, taking up a larger share of the market and resulting in the imposition of higher FETRA assessments.  Because FETRA assessments are imposed proportionate to a manufacturer's own sales, there is no basis for an Equal Protection claim.

/ / /

/ / /

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY JUDGMENT ~ 16

**D.    Unconstitutional Conditions Doctrine**

King Mountain claims that FETRA impermissibly burdens King Mountain's participation in commerce, violating the Unconstitutional Conditions Doctrine. ECF No. 41 at 18-19.  The Unconstitutional Conditions Doctrine serves to "vindicate[] the Constitution's enumerated rights by preventing the government from coercing people into giving them up."  *Koontz*, 133 S.Ct. at 2594.  "[T]he government may not deny a benefit to a person because he exercises a constitutional right."  *Id.*  FETRA neither prevented King Mountain from manufacturing tobacco and placing it into the stream of commerce, nor denied King Mountain any benefit because it engaged in interstate commerce.  FETRA simply imposed a fee, over a period of ten years, based on the amount of tobacco King Mountain manufactured.  FETRA assessments are a cost of doing business, but their cost is not so prohibitive as to have coerced King Mountain into ceasing to manufacture tobacco.  The Court finds that the FETRA assessments do not violate the Unconstitutional Conditions Doctrine.

Accordingly**, IT IS HEREBY ORDERED**:

1.  King Mountain Tobacco Company, Inc.'s Motion for Summary Judgment, **ECF No. 41,** is **DENIED.**

2.  This case is **REMANDED** to the United States Department of Agriculture, Commodity Credit Corporation, **only** for a hearing and determination regarding the accuracy of the FETRA assessments

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY JUDGMENT ~ 17

1    imposed against King Mountain, consistent with this Court's Order, ECF

2    No. 46.

3        The District Court Clerk is directed to enter this Order, to provide copies to

4    counsel.

5        **DATED** this 17th day of September 2015.

6

7                *s/ Rosanna Malouf Peterson*

            ROSANNA MALOUF PETERSON

8            Chief United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER DENYING KING MOUNTAIN'S MOTION FOR SUMMARY
JUDGMENT ~ 18